# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

MICHAEL W. PILKINTON                    )        No.  CV 09-5448 AGR
                Plaintiff,        )
                        )        **MEMORANDUM OPINION AND ORDER**
         v.                              )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security         )
              Defendant.        )
_____ )

     Plaintiff Michael W. Pilkinton filed a complaint on August 4, 2009.  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before Magistrate Judge Rosenberg on September 3 and 18, 2009.  (Dkt. Nos. 8, 9.)  On May 5, 2010, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The Court has taken the matter under submission without oral argument.

     Having reviewed the entire file, the Court affirms the decision of the Commissioner.

///

///

///

///

///

# I.

## PROCEDURAL BACKGROUND

On June 8, 2005, Pilkinton filed an application for disability insurance benefits. Administrative Record ("AR") 124-26.  Pilkinton alleged a disability onset date of February 1, 2003.  AR 124.  The application was denied.  AR 75-79.  On February 22, 2006, Pilkinton filed new applications for disability insurance benefits and supplemental security income.  AR 18.  He alleged a disability onset date of May 10, 2005.  *Id.*  The applications were denied initially and on reconsideration.  *Id.*  Pilkinton requested a hearing before an Administrative Law Judge ("ALJ").  AR 96.  On August 20, 2008, the ALJ conducted a hearing at which a medical expert, a vocational expert ("VE"), and Pilkinton testified.  AR 32-69.  On February 10, 2009, the ALJ issued a decision denying benefits.  AR 18-30.  On or about April 17, 2009, Pilkinton requested that the Appeals Council review the decision denying benefits.  AR 9.  On June 9, 2009, the Appeals Council denied the request for review.  AR 1-3.  This action followed.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  Where the evidence is

1    susceptible to more than one rational interpretation, the Court must defer to the decision
2    of the Commissioner.  *Moncada*, 60 F.3d at 523.

3                                         **III.**

4                                    **DISCUSSION**

5        **A.    Disability**

6        A person qualifies as disabled and is eligible for benefits, "only if his physical or
7    mental impairment or impairments are of such severity that he is not only unable to do
8    his previous work but cannot, considering his age, education, and work experience,
9    engage in any other kind of substantial gainful work which exists in the national
10   economy."  *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333
11   (2003) (citation and quotation marks omitted).

12       **B.    The ALJ's Findings**

13       The ALJ found that Pilkinton met the insured status requirements through
14   December 31, 2009.  AR 20.  Pilkinton has the medically determinable severe
15   impairment of degeneration of the lumbar spine.  *Id.*  He has the residual functional
16   capacity ("RFC") "to perform a range of light work."  AR 22.  He "can occasionally lift and
17   carry twenty pounds and frequently lift and carry ten pounds, . . . can stand, walk and sit
18   for a total of six hours in an eight-hour workday, . . . [and] can occasionally stoop and
19   crouch."  *Id.*  He "is to avoid work [ing] over the shoulder level, climbing ladders, working
20   at unprotected heights, [using] vibrating tools, and [using] hazardous equipment."  *Id.*
21   The ALJ found that Pilkinton is not able to perform any past relevant work as a
22   construction worker.  AR 29.  There are, however, jobs that exist in significant numbers
23   in the national economy that Pilkinton can perform, such as housekeeper, bench
24   assembler, and small product assembler.  AR 29-30.

25       **C.    Dr. Kiester and Dr. Ryba**

26       Pilkinton argues that the ALJ improperly rejected the opinions of Drs. Ryba and
27   Kiester.

28

                                         3

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* at 632 (citations and quotation marks omitted).

In general, "the opinions of examining physicians are afforded more weight than those of non-examining physicians and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians." *Id.* at 631.  An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings. *Id.*  When an examining physician's opinion is contradicted, "it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted).  An ALJ may reject an uncontradicted examining physician's medical opinion based on "clear and convincing reasons." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

"'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.'" *Ryan v. Comm'r, SSA*, 528 F.3d 1194, 1202 (9th Cir. 2008) (citation omitted) (emphasis in original).  However, a non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

## 1.    Dr. Kiester

The ALJ did not mention Dr. Kiester's opinion in his decision.  Dr. Kiester is a Clinical Professor at the University of California Irvine ("UCI") Spine Center.  AR 347.  Dr. Kiester's opinions are contained in a April 12, 2005 letter to Pilkinton's treating

physician and a June 9, 2005 CalWorks form regarding "Physical Capacities."  AR 335-37, 347-48.

In the April 12, 2005 letter, which precedes the alleged onset date of May 10, 2005, Dr. Kiester assessed Pilkinton's impairments as follows:  subjective complaints of L4 radiculitis; L5 weakness bilaterally; spinal instability at L3-4 and L4-5; small recent herniated disc at L4-5; and old resolved herniated disc at L5-S1.  AR 348.  His physical examination revealed tenderness at the lumbosacral junction down into the sciatic notch, greater on the left than the right; negative straight leg raise; 5/5 strength with heel walk, toe walk; and 3+/5 strength on the right extensor hallucis and 4/5 strength on the left extensor hallucis.  *Id.*  Dr. Kiester reviewed an April 7, 2005 MRI indicating herniated discs at L4-5 and L5-S1, and x-rays showing a retrolisthesis at L4-5 and rotational instability between flexion and extension at L3-4.  AR 347.  Dr. Kiester concluded that stabilization from L3 to L5 with fusion from L3 to S1 with a decompression and possible discectomy and/or posterior lumbar interbody fusion at L4-5 would probably benefit Pilkinton.  AR 348.  Because Pilkinton had a new job, he did not want to have the surgery during his probation period.  *Id.*  Dr. Kiester advised Pilkinton to "maintain an exercise program with elevating [your] heart rate at least once a day for 15-20 minutes and avoid heavy loading and flexion of the spine."  *Id.*

On the June 9, 2005 CalWorks form, Dr. Kiester opined that Pilkinton could stand, walk or sit zero to two hours in an eight-hour workday; he was restricted in using his feet for repetitive movements due to LS stenosis and instability; he could occasionally lift/carry 30 pounds; he could frequently lift/carry 20 pounds; he could occasionally climb and kneel; and he could never balance, stoop, crouch or crawl.  AR 335-36.

1    The ALJ did not address Dr. Kiester's opinion.[1]  However, the ALJ did cite

2  subsequent UCI records indicating disability would not be extended past March 1, 2006,

3  less than 12 months later.  AR 22, 461-64.  Any error in failing to mention Dr. Kiester's

4  opinion was harmless.

5         **2.    Dr. Ryba**

6    Pilkinton argues the ALJ erred in discounting the opinion of Dr. Ryba, an

7  examining physician in rheumatology consulted through his counsel.[2]  As the ALJ noted,

8  on July 3, 2008, Dr. Ryba saw Pilkinton for a rheumatology consultation.  AR 27.  On

9  August 4, 2008, Dr. Ryba responded to interrogatories from Pilkinton's attorney,

10  completed a rheumatology evaluation, and completed a physical capacity evaluation

11  form.  AR 710-739.

12    The ALJ stated that he "do[es] not accord great weight" to Dr. Ryba's opinions for

13  four reasons:  (1) the opinions do not concern a continuous period of at least 12 months;

14  (2) the opinions are not supported by the longitudinal objective medical evidence in the

15  record; (3) the opinions are contradicted by the medical expert, Dr. Temple; and (4) Dr.

16  Ryba appeared to be an advocate, and his opinions were not substantiated by definitive

17  abnormalities on a sustained basis.  AR 28.

18    Dr. Ryba diagnosed Pilkinton with lumbar and cervical degenerative disc disease,

19  cervical and lumbar facet osteoarthritis, lumbar disc herniations, L5-S1 radicular and

20  circumferential annular tear, fibromyalgia, bilateral carpal tunnel syndrome and chronic

21

22

23

24

25    [1]    The Commissioner argues that Dr. Kiester's opinion may be discounted for
26  several reasons.  However, a district court is constrained to review the reasons that the
    ALJ asserts for his or her decision.  *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir.
    2003).

27

28    [2]    Rheumatology is the specialty for fibromyalgia.  *Benecke v. Barnhart*, 379 F.3d
    587, 588 (9th Cir. 2004).

1  pain.  AR 27-28, 728-30.  He further opined that Pilkinton met Listing 1.04A due to

2  multilevel lumbar degenerative disc disease with lumbar osteoarthritis.[3]  AR 732.

3      In the Physical Capacities Evaluation, Dr. Ryba opined that Pilkinton can

4  occasionally lift and carry up to ten pounds; can sit for two hours, and stand and walk for

5  one hour in an eight-hour workday; cannot use his hands for repetitive actions; cannot

6  use his feet for repetitive movements; can occasionally reach; cannot bend, squat, crawl,

7  and climb; cannot work in unprotected heights; cannot work around moving machinery;

8  cannot be exposed to marked changes in temperature and humidity; and cannot be

9  exposed to dust, fumes and gases.  AR 28, 715.

10     The ALJ noted that Dr. Ryba's opinions regarding Pilkinton's functional limitations

11 did not concern a continuous period of at least 12 months.  AR 28.  To be considered a

12 disabling impairment, the impairment must have lasted, or must be expected to last, a

13 continuous period of at least twelve months, unless it is expected to result in death.  20

14 C.F.R. § 416.909; *see also* 20 C.F.R. § 416.913(e)(2) (evidence from medical sources

15 must contain detailed information about whether the 12-month duration requirement is

16 met).

17     The ALJ further noted that Dr. Ryba's opinions are unsupported by the objective

18 medical evidence as a whole.  AR 28.  The more consistent an opinion is with the

19 evidence of record, the more weight is given to that opinion.  20 C.F.R. § 404.1527(d)(4).

20  The ALJ examined in detail numerous medical tests and reports in the record  indicating

21

22

23     [3]   Listing 1.04A states:  *Disorders of the spine* (*e.g.*, herniated nucleus pulposus,

24 spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet
arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda

25 equina) or the spinal cord.  With: [¶] A.  Evidence of nerve root compression

26 characterized by neuro-anatomic distribution of pain, limitation of motion of the spine,
motor loss (atrophy with associated muscle weakness or muscle weakness)

27 accompanied by sensory or reflex loss and, if there is involvement of the lower back,
positive straight-leg raising test (sitting and supine).  20 C.F.R. Pt. 404, Subpt. P, App.

28 1, § 1.04A.

1  mild or normal findings that did not support the limitations asserted by Dr. Ryba.  AR 22-
2  27, 464, 474, 478, 499-501, 505, 601, 651, 707.

3       The ALJ further noted that Dr. Temple, a non-examining medical expert, "strongly
4  disagreed with Dr. Ryba's opinion."  AR 28.  A non-examining physician's opinion may
5  serve as substantial evidence when it is supported by other evidence in the record and is
6  consistent with it.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).  As the ALJ
7  observed, Dr. Temple testified at the hearing that the objective findings in the record "did
8  not reflect sustained symptoms or concomitant signs or findings consistent with
9  [Pilkinton's] allegations.  AR 28.  Dr. Temple specifically disputed Dr. Ryba's conclusions
10  and noted the lack of evidence of nerve root compression, specific percentages of range
11  of motion limits, and indications of atrophy or reflex loss.  AR 28, 51-54.  Dr. Ryba's
12  examination found "[n]o muscle atrophy," which is required for the listing.  AR 721; *see*
13  *also* AR 499.  Dr. Temple's testimony was consistent with evidence in the record.  *See,*
14  *e.g.,* AR 464, 474, 478, 501, 505, 601, 651, 707; *see also Magallanes v. Bowen*, 881
15  F.2d 747, 751-55 (9th Cir. 1989) (affirming ALJ's decision awarding less weight to
16  treating physician based on testimony of non-examining physician that was consistent
17  with evidence in the record).

18       The ALJ also noted that Dr. Ryba was "consulted through counsel in support of
19  [Pilkinton's] claim," his opinions were "not substantiated by definitive clinical or laboratory
20  abnormalities on a sustained basis, and his opinions are not supported by ongoing
21  reports of symptoms [of] the level asserted."  AR 28.  The ALJ may consider the fact that
22  an opinion letter was solicited by claimant's counsel as a factor in weighing the opinions
23  of the physician but may not use that fact as the sole basis for rejecting the opinion.  *See*
24  *Saelee v. Chater*, 94 F.3d 520, 523 (9th Cir. 1996) (per curiam) (when doctor's opinion is
25  solicited by plaintiff's counsel, that fact may be used in conjunction with other evidence
26  in the record, such as the absence of objective medical basis for the opinion).  Here,
27  when weighing Dr. Ryba's opinion, the ALJ not only noted he was consulted for
28  purposes of Pilkinton's claim but also found that his opinions were not substantiated as

1  described above.  The ALJ cited the lack of clinical findings in support of the limitations

2  asserted by Dr. Ryba. AR 28, 710-32.

3      The ALJ set forth specific and legitimate reasons, supported by substantial

4  evidence in the record, for discounting Dr. Ryba's opinion.  The ALJ did not err.

5      **D.    Mental Impairment**

6      Pilkinton argues that at step two of the sequential analysis, the ALJ improperly

7  determined that his mental impairment was not severe.  JS 19-22; AR 20.  Pilkinton also

8  contends that the ALJ failed to properly consider the opinions of two State agency

9  physicians, Drs. Balson and Mallare.  JS 19-22; AR 20.

10     At step two, the claimant bears the burden of demonstrating a severe, medically

11  determinable impairment that meets the duration requirement. 20 C.F.R. §

12  404.1520(a)(4)(ii); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 96 L.Ed.2d

13  119 (1987).  To satisfy the duration requirement, the severe impairment must have

14  lasted or be expected to last for a continuous period of not less than 12 months. *Id.* at

15  140.

16     Your impairment must result from anatomical, physiological, or

17     psychological abnormalities which can be shown by medically acceptable

18     clinical and laboratory diagnostic techniques. A physical or mental

19     impairment must be established by medical evidence consisting of signs,

20     symptoms, and laboratory findings, not only by your statement of

21     symptoms.

22  20 C.F.R. § 404.1508; 20 C.F.R. § 416.908.  "[T]he impairment must be one that

23  'significantly limits your physical or mental ability to do basic work activities.'"[4]  *Yuckert,*

24  _____

25      [4]   Basic work activities are the "abilities and aptitudes necessary to do most jobs,"

26  such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling,
    reaching, carrying, and handling; (2) the capacity for seeing, hearing, and speaking; (3)

27  understanding, carrying out, and remembering simple instructions; (4) the use of
    judgment; (5) responding appropriately to supervision, co-workers, and usual work

28  situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §

1  482 U.S. at 154 n. 11 (quoting 20 C.F.R. § 404.1520(c)); *Smolen v. Chater*, 80 F.3d at

2  1273, 1290 (9th Cir. 1996) ("[A]n impairment is not severe if it does not significantly limit

3  [the claimant's] physical ability to do basic work activities.") (citation and quotation marks

4  omitted).  "An impairment or combination of impairments may be found 'not severe only

5  if the evidence establishes a slight abnormality that has no more than a minimal effect

6  on an individual's ability to work.'" *Webb v. Barnhart*, 433 F.3d 683, 686-87 (9th Cir.

7  2005) (citation omitted).  Step two is "a *de minimis* screening device [used] to dispose of

8  groundless claims" and the ALJ's finding must be "clearly established by medical

9  evidence."  *Id.* at 687 (citations and quotation marks omitted).  "[T]he ALJ must consider

10 the combined effect of all of the claimant's impairments on her ability to function, without

11 regard to whether each alone was sufficiently severe." *Smolen*, 80 F.3d at 1290.

12     The ALJ considered the four broad functional areas set out in the disability

13 regulations for evaluating mental disorders and determined that Pilkinton's mental

14 impairment was non-severe.  AR 21.  Properly applying that analytic framework, the ALJ

15 determined that Pilkinton's "medically determinable mental impairment causes no more

16 than 'mild' limitation in any of the first three functional areas and 'no' episodes of

17 decompensation which have been of extended duration in the fourth area."  *Id.* (citing 20

18 C.F.R. § 404.1520a(d)(1)).

19     The ALJ cited substantial evidence to support his findings that Pilkinton's

20 limitations in his activities of daily living, social functioning, and concentration,

21 persistence or pace are mild and that he has no episodes of decompensation.  AR 20-

22 21.  The ALJ relied on a report by State agency psychologist, Dr. Halimah McGee, who

23 conducted a consultative examination.  AR 20-21, 319-24.  Dr. McGee indicated that

24 Pilkinton's mood and affect are socially appropriate; his intermediate memory for daily

---

26 416.921(b); Social Security Ruling ("SSR") 85-15.  (Social security rulings do not have
   the force of law. Nevertheless, they "constitute Social Security Administration
27 interpretations of the statute it administers and of its own regulations" and are given
   deference "unless they are plainly erroneous or inconsistent with the Act or regulations."
28 *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).)

1  events is intact; his remote memory is grossly intact; and his concentration and attention
2  span are within normal limits.  AR 21, 322.  Although Dr. McGee found that Pilkinton has
3  mild cognitive limitations regarding his ability to work, including severe deficits in
4  attention and concentration on some types of tasks, Pilkinton is capable of learning a
5  routine, repetitive task.  AR 21, 323.  Dr. McGee concluded that Pilkinton would be able
6  to function in a regular job setting without additional behavioral controls.  AR 21, 323.
7  His reasoning capacities are adequate; he would not create a hazard at work; and he
8  would be able to maintain regular attendance.  AR 21, 323.

9      The ALJ also relied on Pilkinton's medical records from the Orange County Health
10  Care Agency.  AR 21, 399-448.  He acknowledged that the records indicated mental
11  health complaints and assessments but found Pilkinson's pathology to be no more than
12  mild.  AR 21.  He noted that Pilkinton was advised to obtain employment and was
13  discharged from treatment because he was not cooperative and refused to receive
14  referrals.  AR 21, 416, 418.

15      Further, the ALJ cited the conclusions of the State agency reviewing medical
16  consultant, who determined that the evidence did not support a finding of more than mild
17  limitations in any of the key areas of mental functioning.  AR 21, 526-36.

18      Pilkinton also argues the ALJ erred by not considering the opinions of reviewing
19  physicians, Drs. Balson and Mallare.  Dr. Balson opined that Pilkinton had mild
20  difficulties in maintaining concentration, persistence or pace, and no limitations in the
21  areas of daily living, social functioning, or decompensation.  AR 534.  Where Dr. Balson
22  noted some moderate limitations, he explained that his assessment was based on a
23  diagnosis of substance abuse.  AR 523-25; *see* 42 U.S.C. § 423(d)(2)(C) ("An individual
24  shall not be considered to be disabled for purposes of [benefits] if alcoholism or drug
25  addiction would . . . be a contributing factor material to the Commissioner's
26  determination that the individual is disabled.").  Although Dr. Mallare opined that
27  Pilkinton was moderately limited in the ability to maintain attention and concentration for
28  extended periods and in the ability to complete a normal workday and workweek without

1   interruptions and to perform at a consistent pace, he found no functional limitations that
2   satisfied the functional criterion.  AR 308-09, 316.  In the four functional areas, he found
3   mild limitations in daily living and social functioning and moderate difficulties in
4   concentration, persistence or pace.  AR 316.  In addition, he explained that his
5   assessment was based on diagnoses of a learning disorder and substance addiction
6   disorders.  AR 312; *see* 42 U.S.C. § 423(d)(2)(C).  The ALJ did not err at step two.

7        **E.    Credibility**

8        Pilkinton claims the ALJ improperly assessed his subjective symptom testimony.
9   JS 26-31.

10       "To determine whether a claimant's testimony regarding subjective pain or
11  symptoms is credible, an ALJ must engage in a two-step analysis."  *Lingenfelter v.*
12  *Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007).

13       First, "the ALJ must determine whether the claimant has presented objective
14  medical evidence of an underlying impairment 'which could reasonably be expected to
15  produce the pain or other symptoms alleged.'"  *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d
16  341, 344 (9th Cir. 1991) (en banc)).  The ALJ found that Pilkinton's medically
17  determinable impairment could reasonably be expected to cause the alleged symptoms.
18  AR 28.

19       "Second, if the claimant meets this first test, and there is no evidence of
20  malingering, 'the ALJ can reject the claimant's testimony about the severity of her
21  symptoms only by offering specific, clear and convincing reasons for doing so.'"
22  *Lingenfelter*, 504 F.3d at 1036 (citations omitted).  "In making a credibility determination,
23  the ALJ 'must specifically identify what testimony is credible and what testimony
24  undermines the claimant's complaints.'"  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir.
25  2006) (citation omitted).  "[T]o discredit a claimant's testimony when a medical
26  impairment has been established, the ALJ must provide specific, cogent reasons for the
27  disbelief."  *Orn*, 495 F.3d at 635 (citations and quotation marks omitted).  "The ALJ must

28

1 cite the reasons why the claimant's testimony is unpersuasive." *Id.* (citation and
2 quotation marks omitted).

3      In weighing credibility, the ALJ may consider factors including:  the nature,
4 location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and
5 aggravating factors (*e.g.*, movement, activity, environmental conditions); type, dosage,
6 effectiveness, and adverse side effects of any pain medication; treatment, other than
7 medication, for relief of pain; functional restrictions; the claimant's daily activities; and
8 "ordinary techniques of credibility evaluation." *Bunnell*, 947 F.2d at 346 (citing SSR 88-
9 13, quotation marks omitted).  The ALJ may consider:  (a) inconsistencies or
10 discrepancies in a claimant's statements; (b) inconsistencies between a claimant's
11 statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to
12 seek treatment. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

13      The ALJ made no finding of malingering.  The ALJ determined that Pilkinton's
14 subjective complaints about the intensity, persistence and limiting effects of his alleged
15 symptoms "are not credible to the extent they are inconsistent with the [RFC]."  AR 28-
16 29.  In support of his credibility determination, the ALJ cited Pilkinton's conservative
17 treatment and lack of objective medical evidence supporting Pilkinton's symptoms.  AR
18 29.

19      "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's
20 testimony regarding severity of an impairment."  *Parra v. Astrue*, 481 F.3d 742, 751 (9th
21 Cir. 2007) (citation omitted).  The ALJ noted that Pilkinton's treatment was based on a
22 continuing medication regimen and routine office visits.[5]  AR 29.  Although Dr. Kiester
23 presented spinal fusion as an option in April 2005, Pilkinton declined surgery at that
24 time.  AR 347-48.  He was advised to maintain an exercise program and to avoid heavy
25 loading and flexion of the spine.  AR 348.  In March 2007, Dr. Bhatia found Pilkinton's

26  

27     [5]   Impairments that can be controlled effectively with medication are not considered
28 disabling.  *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

1  degenerative disc disease to be mild or moderate.[6]  AR 601.  He did not believe that

2  Pilkinton was a surgical candidate and referred him to a pain management clinic.  *Id.*

3  Pilkinton underwent a series of lumbar epidural steroid injections, having had "good relief

4  of pain after the first lumbar epidural steroid injection."  AR 742, 744.  The pain

5  management clinic recommended continuing his medications and daily exercise.  AR

6  742, 744.  By April 2009, Pilkinton's pain intensity had decreased and he was able to get

7  a job doing maintenance work.  AR 748.

8      Although not sufficient alone, inconsistency with the objective medical record is a

9  factor that may be considered in assessing credibility.  *Burch v. Barnhart*, 400 F.3d 676,

10  681 (9th Cir. 2005).  The ALJ noted that there were "no significant sustained imaging

11  and/or x-ray abnormalities or symptoms incompatible with the [RFC]," and there were

12  inconsistencies between Pilkinton's allegations and the medical evidence.  AR 29.  For

13  example, the ALJ noted that on July 17, 2006, a physician's assistant wrote that he had

14  "discussed [Pilkinton's] case briefly today with Dr. Raczka, and he feels that if the tests

15  keep coming back normal, including the MRI that was done from a previous visit that

16  shows essentially very mild degenerative disc disease with no central or foraminal

17  stenosis, that he may have to be referred back . . . for follow-up primary care only and

18  discharged from orthopaedic service."  AR 23, 489.  The ALJ further noted that Dr.

19  Conaty, a consultative examining orthopedic physician, found no evidence of scoliosis;

20  normal extremity alignment; some difficulty with weight bearing gait, walking on toes,

21  and walking on heels; no evidence of muscle spasm, swelling, or masses; minimal

22  tenderness in paraspinal muscles; and no tenderness in the muscles throughout the

23  thighs and/or legs.  AR 24, 500.  Dr. Conaty stated that "Pilkinton has some significant

24  subjective complaints with minimal objective findings," and concluded that Pilkinton

25  could occasionally lift and carry fifty pounds and frequently lift and carry twenty-five

26  

_____

27      [6]   Dr. Kiester apparently referred Pilkinton to Dr. Bhatia after Pilkinton "got a lawyer
against [Dr. Kiester]," who changed his mind about recommending surgery for Pilkinton.

28  AR 637.

1   pounds; and he could stand, walk and sit for a total of six hours in an eight-hour

2   workday.  AR 24, 501.  The ALJ also noted that on March 15, 2007, Dr. Bhatia examined

3   radiographs of Pilkinton's lumbar spine, which showed only minimal degenerative disc

4   disease at L4-5 and L5-S1 and no evidence of spinal stenosis.  AR 25, 600-02.

5         The ALJ's credibility finding is supported by substantial evidence.   "If the ALJ's

6   credibility finding is supported by substantial evidence in the record, we may not engage

7   in second-guessing."  *Thomas*, 278 F.3d at 959 (citing *Morgan v. Comm'r of the Soc.*

8   *Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999)).

9                                      **IV.**

10                                    **ORDER**

11        IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

12        IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order

13   and the Judgment herein on all parties or their counsel.

14

15   DATED:  March 31, 2011          _____
                                      ALICIA G. ROSENBERG
16                                    United States Magistrate Judge

17

18

19

20

21

22

23

24

25

26

27

28